```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF PUERTO RICO

 3

 4  UNITED STATES OF AMERICA,    )
                                 )
 5              Plaintiff,       )   Case No. 06-299
                                 )
 6        vs.                    )
                                 )
 7  JOSE CABRERA-COSME,          )
                                 )
 8              Defendant.       )

 9

10                         SENTENCING HEARING

11

12          BEFORE THE HONORABLE CARMEN CONSUELO CEREZO

13                      HATO REY, PUERTO RICO

14               WEDNESDAY, APRIL 6, 2011, 4:30 P.M.

15

16  APPEARANCES:

17  FOR THE PLAINTIFF:        CARMEN MARQUEZ
                              ILIANYS RIVERA
18                            ASSISTANT U.S. ATTORNEYS

19
    FOR THE DEFENDANT:        ELFRICK MENDEZ, ESQ.
20

21  COURT REPORTER:           Zulma M. Ruiz, RMR
                              150 Chardon Avenue
22                            Hato Rey, PR  00918
                              (787) 772-3375
23

24

25
```

1      **THE CLERK:**  Criminal No. 06-299, United States of
2  America versus Jose Cabrera-Cosme for sentence.
3      On behalf of the Government, Assistant U.S. Attorneys
4  Carmen Marquez and Ilianys Rivera.
5      On behalf of the Defendant, attorney Elfrick Mendez.
6  Defendant is present in court and he is being assisted by the
7  official court interpreter.
8      **THE COURT:**  Good afternoon to the Government counsel,
9  Ms. Marquez and Ms. Rivera, and to Defense attorney
10 Mr. Mendez.
11     **MR. MENDEZ:**  Good afternoon, Your Honor.
12     **THE COURT:**  Good afternoon, Mr. Cabrera.
13     **THE DEFENDANT:**  Good afternoon.
14     **THE COURT:**  Mr. Cabrera, during the trial of this
15 case you were referred to as Luis Villalobos, and I believe
16 that in the Indictment -- is the nickname Luisito used in the
17 Indictment?
18     **MS. MARQUEZ:**  Luis Villalobos, Your Honor.
19     **THE COURT:**  Not Luisito.  Where does the Luisito come
20 from?  Is there any source for that nickname from Government's
21 information?
22     **MS. MARQUEZ:**  Perhaps during the testimony of the
23 witnesses, Your Honor, someone could have referred to him as
24 Luisito, but not in the Indictment.
25     **PROBATION OFFICER:**  Your Honor, I believe that when I

 1  interviewed the Defendant, he said he was called Luisito.

 2          **THE COURT:**  Could you state your name for the record.

 3          **PROBATION OFFICER:**  Joanne Vazquez, U.S. probation
 4  officer, for the record.

 5          **THE COURT:**  Thank you.  Does the Defendant want to
 6  address the nicknames, Luis Villalobos is an a/k/a, his name
 7  is Jose Luis, and Luisito would be a nickname; do you wish to
 8  address that?

 9          **MR. MENDEZ:**  Yes, Your Honor.  The Defendant's family
10  refers to him as Luisito.

11          **THE COURT:**  Well, the witnesses in the case, some of
12  them referred to him as Luis Villalobos.

13          **MR. MENDEZ:**  Yes, Your Honor, that was the evidence
14  presented at trial.  I believe that was the only nickname used
15  as to him during the trial.

16          **THE COURT:**  Now, Mr. Mendez, did you discuss the full
17  content of the probation officer's report with the Defendant?

18          **MR. MENDEZ:**  Yes, Your Honor.  The record should
19  reflect that I met with the Defendant and I discussed with him
20  the content of the presentence report, the sentencing
21  memorandum that I filed on his behalf.  I have also discussed
22  with him the Government's opposition and the Court's order
23  issued today addressing the arguments raised in the sentencing
24  memorandum.

25          **THE COURT:**  Did you explain the Court's last Order on

1 the objections to the PSR to him?

2 **MR. MENDEZ:** Yes, Your Honor, I did.

3 **THE COURT:** And Mr. Cabrera, did you understand what
4 your attorney explained to you regarding what the probation
5 officer reported in your case, in the presentence
6 investigation report?

7 **THE DEFENDANT:** Yes.

8 **THE COURT:** And Mr. Mendez has also said that he
9 informed you of the Court's ruling today on your objections to
10 the probation officer's report?

11 **THE DEFENDANT:** Yes.

12 **THE COURT:** Is there any reason -- oh, does the
13 Government have the Court's ruling on the objections?

14 **MS. RIVERA:** Yes, Your Honor.  In addition to the
15 revisions that have already been made to the presentence
16 report, after the filing of the presentence report on
17 October 22nd, I believe, we submitted a letter to the
18 probation officer, we provided a copy to Defense counsel,
19 where we noted certain additional revisions, and they were
20 mostly typos, and these, I believe, the Defense has no
21 objection that they be added to the presentence report.  I
22 already discussed this with both the probation officer and
23 with Defense counsel, and they will be incorporated into the
24 presentence report.

25 **MR. MENDEZ:** Yes, Your Honor, we acknowledge that we

1  discussed that with counsel for the Government.  We received
2  that last year, those corrections were contained in a letter
3  that counsel for the Government sent to us in an e-mail.  They
4  are mostly typos and other corrections that should be made to
5  the report.
6          **THE COURT:**  All right.  So you have no objection?
7          **MR. MENDEZ:**  I have no objection that those
8  corrections be made.
9          **THE COURT:**  Those corrections will be incorporated.
10         **PROBATION OFFICER:**  Yes, Your Honor.
11         **THE COURT:**  Mr. Mendez, is there any reason why your
12 client should not be sentenced at this time?
13         **MR. MENDEZ:**  Not to our knowledge, Your Honor.  May I
14 address the Court briefly?
15         **THE COURT:**  Well, let me ask Mr. Cabrera.
16         Mr. Cabrera, is there any reason why I should postpone
17 your sentence?
18         **THE DEFENDANT:**  No.
19         **THE COURT:**  Yes, Mr. Mendez, you may address the
20 Court.
21         **MR. MENDEZ:**  Our sentencing memorandum is on file and
22 the Court has ruled on those objections and arguments, I'm not
23 going to address those.  I will -- and these facts, what I'm
24 going to say, most of this information is already in the
25 presentence report, but I want to bring the Court's attention

1  to that prior to sentencing.  The Defendant is essentially a
2  first time offender, Your Honor, he's Criminal History
3  Category 1.  He is still a young man; the father of a minor
4  child, Luis Jose, who is age 6, who is a product of his
5  relationship with Ms. Gladys Pinela, which is the sister of
6  codefendant Melvin Mendez Roldan.  Through our trial the
7  evidence was consistent that Mr. Mendez Roldan was the overall
8  leader of the drug trafficking organization, and while we
9  acknowledge the evidence that was presented as to our client's
10 role, it is true that consistently what came out during trial
11 was that Melvin Mendez Roldan was the leader and at one point
12 he went to prison, and after that my client acted as sort of
13 his representative or as a proxy for him at the housing
14 project, Your Honor, at the Nemesio Canales Housing Project.
15         The evidence at trial was that the major decisions
16 were still being made by Mr. Mendez Roldan, even though he was
17 in prison, Your Honor.  The proceeds from the drug trafficking
18 corresponding to Mr. Mendez Roldan were being collected for him
19 by my client.
20         Though my client is being treated as a leader or an
21 organizer of the drug trafficking organization, our position is
22 that his role was more that of a proxy for Mr. Mendez Roldan,
23 Your Honor.  There's also the family relationship, he is his
24 brother-in-law.
25         Also, with regard to the evidence of murders and

1  deaths during the span of the conspiracy, the testimony was
2  that my client was present at meetings where some of those
3  deaths were discussed and planned.  As opposed to the other
4  defendants, Your Honor, there was no evidence that he
5  participated directly in those murders, that he took a weapon
6  and shot at someone and killed someone.  In that regard, my
7  client is in a different position as to his codefendants in
8  this case, Your Honor, and I also wanted to bring the Court's
9  attention to that.
10           Being sentenced to life in prison without the
11 possibility of ever getting out is basically a life without
12 hope, without any hope whatsoever of ever sharing with his son
13 again or sharing with his mother, who is sitting in this
14 courtroom, except for visiting days, Your Honor.  Even the
15 worst offenders must have some kind of hope of getting out some
16 day.  We basically ask the Court that, if it deem it fit, to be
17 lenient as to the Defendant in this case.
18           Submitted.
19           **THE COURT:**  Thank you.  Mr. Cabrera, you may now
20 address the Court yourself, anything that's on your mind, that
21 you want to share with the Court, any information, anything
22 that you want to say that is important for you and that you
23 wish for the Court to consider, you may state so at this time.
24           **THE DEFENDANT:**  I want to tell my mother
25 that.... (pause).

1    **THE COURT:**  Tell her, whatever you want to tell her,
2  she's waiting to hear you.
3    **THE DEFENDANT:**  -- that I love her very much and that
4  I trust that we will be all together soon, and to forgive me
5  for this process that I am facing right now.  And to my
6  brother who is there -- he is my youngest brother -- that I
7  love him, and that I trust in God that there will be hope and
8  that we will be together, like we have always been, we're a
9  very united family.
10   I thank my mother for always giving me her support
11 during this process that has been so hard.  I want to tell her
12 to please just go in peace, with peaceful thoughts, and to tell
13 my children that I love them very much, that their father will
14 soon be out, with the help of God.
15   And I end by telling this Court good afternoon.
16   **THE COURT:**  Mr. Cabrera, how old is your younger
17 brother, if you know?
18   **THE DEFENDANT:**  My brother, if I'm not mistaken, he's
19 20.
20   **THE COURT:**  Thank you.
21   The United States, any comments?
22   **MS. RIVERA:**  Your Honor, the record should be clear
23 that the evidence that was presented at trial in this case did
24 show that this Defendant was a leader within the drug
25 trafficking organization.  There was evidence that he was a

1  drug point owner, an owner of the drug crack point; that he
2  had runners, that he had sellers, that he had facilitators
3  that worked for him during the span of the drug trafficking
4  conspiracy; that he, along with others, were responsible for
5  distributing at least 18 kilograms of crack cocaine per year
6  during the span of the conspiracy.  And that this Defendant
7  was personally involved in the conspiracy to murder, to murder
8  rivals of the drug trafficking organization, such as Jose A.
9  Medina Nieves and Richard Figueroa Perdomo, and in that sense
10 this Defendant did carry firearms and did give firearms to
11 others in furtherance of the commission of those offenses or
12 murders.  In this case the Government proved at least seven
13 drug related murders.
14         We believe, Your Honor, that in this case the
15 guidelines adequately reflect the severity of the offense that
16 was committed by this Defendant. In that regard, we are
17 recommending to the Court that he be sentenced to a term of
18 life imprisonment as to both counts, to run consecutively to
19 each other.
20         **THE COURT:**  Thank you, Ms. Rivera.
21         Mr. Cabrera, this is the sentence of the Court:  On
22 June 11, 2010, Defendant, Jose Luis Cabrera Cosme, also known
23 as Luis Villalobos and who goes by the nickname Luisito, was
24 found guilty after a jury trial on Counts 1 and 2 of a Second
25 Superseding Indictment filed in Criminal No. 06-299, charging

1  him with a violation of 21 U.S. Code, Section 841(a)(1) and
2  Section 860, involving a conspiracy to possess with the intent
3  to distribute at least 50 grams or more of cocaine base and a
4  detectable amount of marijuana, within one thousand feet of a
5  public housing or a public elementary school, in violation of
6  Title 18, U.S. Code, Section 924(c)(1)(A)(iii), involving a
7  conspiracy to use, carry, possess, and discharge firearms, both
8  class "A" felonies.
9        The United States Sentencing Guidelines for the Title
10 21 U.S. Code, Sections 841(a)(1), 846, and 860 offenses are
11 found in Sections 2D1.1 and 2D1.2.  However, since seven
12 victims were murdered as a manner or a means of furthering the
13 drug conspiracy, the cross reference to apply Guideline Section
14 2A1.1 is authorized pursuant to Guideline Section 2D1.1(d)(1),
15 establishing a base offense level of 43.
16       Defendant has been identified as a leader in the
17 conspiracy, which involved five or more participants under
18 Guideline Section 3B1.1(a), therefore, a four level increase is
19 mandated.
20       Since minors were used during the commission of the
21 offense, a two level increase is authorized under Guideline
22 Section 3B1.4.
23       There are no other applicable guideline adjustments.
24       Although the total offense level after applying the
25 adjustments would be a level 49, it is capped at level 43 under

Case 3:06-cr-00299-FAB-CVR   Document 1514   Filed 11/02/11   Page 11 of 19

11

1  Application Note 2 to Chapter 5, Part A, of the Sentencing
2  Guidelines Manual, Sentencing Table.
3        Count 2 is precluded from the application of the
4  sentencing guidelines under Guideline Section 2K2.4(b), as
5  statutory provisions mandate a fixed consecutive imprisonment
6  term.
7        Based on a total offense level of 43 and a Criminal
8  History Category of 1, the Guideline Imprisonment Range in this
9  particular case is life, with a fine range of 25,000 to
10 eight million, plus a supervised release term of at least ten
11 years as to Count 1 and not more than five years as to Count 2.
12       Before the Court is a 33-year-old defendant who has a
13 seventh grade education and a limited employment history.
14 Mr. Cabrera has one child.  He was raised by his mother and his
15 maternal grandmother, both of whom supported him fully.  As
16 described by his grandmother, he had a good childhood.  Neither
17 mother nor grandmother ever abused or neglected him.  He is a
18 first time offender.
19       Together with the co-conspirators and codefendants in
20 this case, Mr. Cabrera led an organization that controlled drug
21 trafficking activities at the Canales Housing Project for a
22 span of three years, approximately.  His participation in the
23 conspiracy, as shown by the evidence, was closely associated
24 with that of codefendant Melvin Mendez Roldan, the brother of
25 his consensual wife.  Both owned crack drug points at the La

1   Recta stretch and both were armed during the conspiracy.

2           Now, while Mr. Mendez Roldan was incarcerated, he
3   continued operating his crack drug point and his control of
4   drug activity through co-conspirator Cabrera.  Cabrera also
5   received rent on Mr. Mendez' behalf for allowing others to sell
6   drugs.

7           Defendant, as leader of the drug organization, had the
8   power to authorize or to reject the sale of crack at La Recta
9   by others than those who were the core members.

10          The Defendant participated in the decision to kill
11  Richard Figueroa Perdomo, known as Indio, over rivalry in the
12  control of the crack sales at the housing project.  He also
13  participated in the murder of Jose A. Medina Nieves, also known
14  as Agustin, again due to the belief held by the Defendant, and
15  his co-conspirators, that Agustin posed a threat to the
16  organization.

17          The advisory guidelines adequately reflect the nature
18  of the offenses and the history and characteristics of the
19  Defendant.  Taking into account all factors listed in 18 U.S.
20  Code, Section 3553(a), and particularly the seriousness of the
21  two conspiracies charged, the Defendant's role in them and his
22  personal characteristics, the Court finds that the advisory
23  guideline sentence is sufficient but not greater than necessary
24  to meet statutory objectives of punishment and of deterrence in
25  this case.

 1            Therefore, it is the judgment of the Court that
 2   Defendant is hereby committed to the custody of the Bureau of
 3   Prisons to be imprisoned for the remainder of his natural life
 4   as to Count 1 and to 10 years as to Count 2, to be served
 5   consecutively with each other.
 6            If he is ever released from confinement, Defendant
 7   shall be placed on supervised release for a term of 10 years as
 8   to Count 1 and five years as to Count 2, to run concurrently
 9   with each other under the following terms and conditions:
10            One, Defendant shall not commit another federal, state
11   or local crime, and he shall observe the standard conditions of
12   supervised release recommended by the U.S. Sentencing
13   Commission and adopted by the court.
14            Two, Defendant shall not unlawfully possess controlled
15   substances.
16            Three, Defendant shall refrain from possessing
17   firearms, destructive devices, and other dangerous weapons.
18            Four, the Defendant shall refrain from the unlawful
19   use of controlled substances and he shall submit to a drug test
20   within 15 days of release from imprisonment.  After release,
21   Defendant shall submit to random drug testing, not to exceed
22   104 samples per year, in accordance with the Drug Aftercare
23   Program policy of the U.S. Probation Office approved by this
24   Court.  If any samples detect substance abuse, Defendant shall
25   participate in a drug treatment program as an inpatient or as

1  an outpatient, in accordance with that policy.  Defendant is
2  required to contribute to the cost of the services rendered by
3  means of co-payment based on his ability to pay or the
4  availability of third party payments as approved by the court.
5          Five, Defendant shall provide the U.S. probation
6  officer access to any financial information upon request and he
7  shall produce evidence to the U.S. probation officer to the
8  effect that income tax returns have been duly filed within his
9  place of residence as required by the law.
10         Six, Defendant shall submit his person, residence,
11 office, electronic device, or vehicle to a search conducted by
12 a U.S. probation officer at a reasonable time and in a
13 reasonable manner, based upon reasonable suspicion of
14 contraband or of evidence of a violation of a condition of
15 release.  Failure to submit to a search may be grounds for
16 revocation.  Defendant shall warn any other residents that the
17 premises may be subject to searches pursuant to this condition.
18         Seven, Defendant shall cooperate in the collection of
19 a DNA sample as directed by the U.S. probation officer pursuant
20 to the Revised DNA Collection Requirements and 18 U.S. Code,
21 Section 3563(a)(9).
22         Eight, Defendant shall participate in a vocational
23 training and/or job placement program recommended by the U.S.
24 probation officer.
25         Having considered Defendant's financial condition, a

1  fine is not imposed.

2         A special monetary assessment in the total amount of
3  $200 is imposed as mandated by the law.

4         Mr. Cabrera, the Court advises you as follows:  You
5  have a right to appeal since you were found guilty after
6  entering a plea of not guilty.  The notice of appeal shall be
7  filed in this district court within 14 days after entry of the
8  Court's judgment.  You have a right to request or apply for
9  leave to appeal as an indigent person if you are unable to pay
10 the costs of an appeal.  I understand Mr. Mendez is court
11 appointed counsel, correct?

12        **MR. MENDEZ:**  That is correct, Your Honor.

13        **THE COURT:**  So, Mr. Mendez, as court appointed
14 counsel who represents you, will continue to represent you
15 through an appeal, if any is taken, unless a substitute
16 counsel is later appointed.  And you will be given credit
17 towards your sentence for the days that you have spent in
18 federal custody in connection with the offenses for which
19 sentence has been imposed upon you today.

20        Transcript of this hearing shall be sent within 30
21 days to the Probation Office, the Sentencing Commission, and
22 the Bureau of Prisons.

23        The United States, any other matter?

24        **MS. RIVERA:**  Nothing further from the Government.

25        **THE COURT:**  The Defendant.

1     **MR. MENDEZ:**  Yes, Your Honor.  The Defendant
2  respectfully requests that the Court recommend to the Bureau
3  of Prisons that he be designated to serve his sentence at an
4  institution in the state of Alabama, if possible.
5     **THE COURT:**  Alabama?
6     **MR. MENDEZ:**  Alabama, Your Honor.
7     **THE COURT:**  The Court will so recommend.
8     **MR. MENDEZ:**  Thank you, Your Honor.
9     **THE COURT:**  You may withdraw.
10    **MR. MENDEZ:**  Your Honor, not pertaining strictly to
11 the sentence, the Defendant -- we had notified of this
12 situation to the Court through motions that he has filed --
13 suffered a fall at MDC Guaynabo, and I discussed the situation
14 with him because he wasn't receiving adequate treatment.  He
15 told me that he was taken to an appointment and received some
16 X-rays and was told that he was going to be referred to some
17 physical therapy, and if that did not help, that he would be
18 undergoing surgery.  We just wanted to state that for the
19 record, Your Honor, because that motion is in the docket.
20    **THE COURT:**  I know there is a motion regarding the
21 matter that you have raised, but I thought that had been
22 resolved.
23    **MR. MENDEZ:**  This is the status of what's going on.
24    **THE COURT:**  Let me address the Defendant himself.
25       Mr. Cabrera, the information that I have is that

1  treatment was given in the sense that X-rays were taken.

2       **THE DEFENDANT:**  Yes.

3       **THE COURT:**  Exactly what is your injury?

4       **THE DEFENDANT:**  My little finger broke, I was not
5  given the treatment I was supposed to receive in prison and
6  several months have elapsed, and the only thing they've done
7  is to take a few X-rays, but the finger is out of shape,
8  really, it's not healing well.

9       **THE COURT:**  Let me see your hand, raise your hand.
10 Can you stretch that finger?

11      **THE DEFENDANT:**  No.

12      **THE COURT:**  Can you use it at all, move it?

13      **THE DEFENDANT:**  I can move it, but any time I hit
14 anything with the finger, it's a very sharp pain that I feel.

15      **THE COURT:**  And how long ago was this?

16      **THE DEFENDANT:**  I can't tell you exactly how long,
17 but it's been several months now.

18      **MR. MENDEZ:**  The authorities at MDC, their position
19 is that they are going to be sending him to physical therapy
20 first, and if that does not work, they will refer him to have
21 surgery.

22      **THE COURT:**  But he is scheduled for therapy?

23      **MR. MENDEZ:**  Yes, Your Honor, that is the information
24 that I have.

25      **THE COURT:**  All right.  So give follow up to that.

 1        **MR. MENDEZ:** I will.

 2        **THE COURT:** Because he does look like he has a
 3 limitation and a deformity in the little finger of his hand.

 4        So if that's the situation, you have information that
 5 he will be referred from the BOP?

 6        **MR. MENDEZ:** That is correct, Your Honor.

 7        **THE COURT:** Well, give follow up to that information,
 8 and if that doesn't happen, you will let me know.

 9        **MR. MENDEZ:** I will, Your Honor, thank you.
10 Permission to withdraw.

11        **THE COURT:** You may withdraw.

12        (Whereupon at 4:55 p.m. this hearing was concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        REPORTER'S CERTIFICATE

2

3         I, ZULMA M. RUIZ, Official Court Reporter for the

4  United States District Court for the District of Puerto Rico,

5  appointed pursuant to the provisions of Title 28, United States

6  Code, Section 753, do hereby certify that the foregoing is a

7  true and correct computer-aided transcript of proceedings had

8  in the within-entitled and numbered cause on the date herein

9  set forth; and I do further certify that the foregoing

10 transcript has been prepared by me or under my direction.

11

12

13

14

15

16
                                S/Zulma M. Ruiz
17                          _____

18                              Official Court Reporter

19

20

21

22

23

24

25